No. 3094

On October 2, 1926, Roy Alexander was committed to the Oklahoma penitentiary to serve a term of forty (40) years. On June 17, 1931, he was given a conditional pardon, the conditions being that he should leave the State of Oklahoma and conduct himself uprightly. He came to Texas and on March 30, 1935, was convicted in two cases of forgery, receiving concurrent sentences of five years, and was admitted into the penitentiary on April 10, 1935. Thereafter, on July 21, 1938, the Governor of Oklahoma revoked the conditional pardon and issued a requisition for the convict's return. The Governor of Texas granted the requisition and Alexander was delivered to the agents of Oklahoma and returned to that State to resume his servitude there.

Held, that although the Governor of Texas was without authority to honor the requisition under the circumstances and the convict's delivery to Oklahoma was without authority of law, his Texas sentences have continued to run, and further, that if counting overtime earned and with credit for good behavior his Texas sentences have expired, he is entitled to $50.00 discharge money.

OFFICE OF THE ATTORNEY GENERAL

January 25, 1940

Honorable O. J. S. Ellingson
General Manager
Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. O-1255
Re: Whether unexpired portion of
Texas sentence of convict in-
carcerated in penitentiary
and who was delivered to au-
thorities of Oklahoma to serve
sentence in that State should
be considered as having been
served upon the expiration of
the term of his sentence.

From your letter and an independent investigation of official documents on file in the Office of the Secretary of State, we are possessed of the following facts:

On October 2, 1926, Roy Alexander was committed to the State Penitentiary of Oklahoma to serve a term of forty years upon a conviction of manslaughter. By executive proclamation of Governor Murray, dated June 17, 1931, Alexander was granted a parole containing a number of conditions, one of such being that he should forthwith leave the State of Oklahoma and that "he should in all ways conduct himself as an upright and law abiding citizen." Alexander thereupon came to the State of Texas and on March 30, 1935, was convicted in the District Court of Harrison County in two cases of forgery and sentenced to serve a term of five years. He was received in the penitentiary of Texas on April 10, 1935. On notice of this conviction in Texas, the parole was duly revoked by the Chief Executive of Oklahoma and on July 21, 1936, before the expiration of the Texas prison sentence, a requisition was issued by Governor Marland directed to the Governor of Texas. Governor Allred granted the requisition and issued his executive warrant, whereupon the prisoner was delivered to the designated agent of the State of Oklahoma and taken to that State for further penal servitude. No pardon, reprieve or parole was issued concerning the convictions in Harrison County.

The convict Alexander having been continuously confined in the State Penitentiary of Oklahoma since his delivery to that State on July 23, 1936, and still being so confined under his aforesaid conviction in that State, you request our opinion in substance as to whether the unexpired portion of his Texas sentences has been running concurrently with his Oklahoma sentence and whether the State owes him the fifty dollars discharge money.

It has been held that one who, while on parole, goes into another state and commits an offense for which he is sentenced, becomes a fugitive from justice from the first state upon revocation of the parole, and when such parole is revoked, the convict becomes subject to extradition. Ex parte McBride, (California, Ct. of App.) 101 Cal. App. 251, Ex parte Williams, 10 Okla. Cr. 344, 136 Pac. 597, 51 L. R. A. (N.S.) 668; Ex parte Hamilton, 41 Okla. Cr. 322, 275 Pac. 286; Drinkall v. Spiegel, 68 Conn. 441, 36 A. 830, 35 L. R. A. 486; Ex parte Carroll, 86 Tex. Cr. R. 301, 217 S. W. 382, 8 A. L. R. 901.

The general rule in the majority of cases studied in other jurisdictions appears to be that if, at the time a requisition by the Governor of one state is made on the Governor of another state for the delivery of a fugitive from justice, the fugitive is in the custody of the courts of the asylum state under a charge of offense against its laws, the Governor thereof is not required to surrender such fugitive until after the judgment of the court of that state is satisfied. See People v. Klinger, 319 Ill. 275, 149 N. E. 799, 42 A. L. R. 581; Taylor v. Taintor, (U.S.) 16 Wall. 366, 21 L. Ed. 287, 4 Am. Rep. 58; Opinion of Justices, 201 Mass. 609, 24 L. R. A. (N.S.) 799, 89 N. E. 174; Ex parte Hobbs, 32 Tex. Cr. Rep. 312, 40 Am. St. Rep. 782, 22 S. W. 1035.

If the law of the state in which asylum has been sought has been violated by the fugitive, and he has been convicted there, and is undergoing sentence, the demands of the law thus violated may be first satisfied before obedience to the constitutional provision to surrender him arises.

Kelly v. Mangam, 145 Ga. 57, 88 S. E. 556; Cozart v. Wolf, 185 Ind. 505, 112 N. E. 241; People v. Benham, 71 Misc. Rep. 345, 128 N. Y. Supp. 610.

In habeas corpus proceedings brought by the respective prisoners, our Court of Criminal Appeals in two cases has held that the Governor of our State has no power to grant extradition of a person against whom criminal proceedings are pending until the proceedings are disposed of. Ex parte —Hobbs, 22 S. W. 1035; Ex parte McDaniel, 173 S. W. 1018. In a letter opinion written by Assistant Attorney General Elbert Hooper to Honorable Geo. W. Johnson, District Judge, on March 27, 1931, it was held that the penitentiary authorities of this State are not authorized to release a person convicted of a felony in this State before his sentence is ended, except by the intervention of executive clemency. Letter Opinions Attorney General, Volume 320, page 8.

As already indicated, if the convict had had the opportunity, the means and the desire, he could have required the penitentiary authorities of Texas to retain him in this State until the completion of the sentences imposed upon him by the District Court of Harrison County. From the fact that Alexander was taken from the Texas penitentiary and returned to Oklahoma upon an extradition warrant, rather than upon a waiver, it would appear that the convict's consent was not obtained for his removal. On July 23, 1938, Alexander was entitled to remain in the penitentiary of this State for the completion of his Texas sentences. Without any fault on his part, he was taken from this penitentiary and delivered to the authorities of another state for continued servitude in that state. Since that time he has been helpless to resume his servitude of the Harrison County sentences. Have his Texas sentences been served or must he be considered as an escape?

In the case of Ex parte Lawson, 266 S. W. 1101, the facts were as follows: On February 8, 1921, the relator was convicted of a Federal offense and condemned to be imprisoned for a period of one year. While imprisoned under this judgment and in custody of officers of the United States, he was, on February 26, 1921, brought before the District Court of El Paso County, Texas, and upon a plea of guilty was convicted of an offense against the laws of this State and given a sentence of five years in the penitentiary. The sentence provided that he should be delivered by the sheriff of El Paso County to the superintendent of the penitentiary to serve such sentence. It was silent as to whether it should be concurrent with or cumulative of the Federal sentence. He was at once re-delivered to the United States authorities and by them confined in prison for one year. Thereafter he served enough time in the State penitentiary to complete his sentence if given credit for the time spent in the Federal prison. He filed an application for writ of habeas corpus thus presenting the issue as to whether he should thus receive credit for the period of his imprisonment in the Federal penitentiary. The Court of Criminal Appeals ordered the relator released from custody saying that "except in cases of escape of the prisoner after conviction, we are aware of no instances in which it has been judicially determined that he may be held in prison after the date on which his term of imprisonment would expire counting its beginning from the date the judgment of conviction rendered became final."

Conceding that in the Lawson case, supra, the State authorities were compelled to deliver the prisoner to the United States authorities, does it make any difference in the present case that the Governor of Texas may not have been authorized to grant the requisition of Oklahoma and that the officials of the Texas penitentiary should not have delivered Alexander to the agents of Oklahoma? We do not believe so.

In the case of In re Jennings, 118 Fed. 479, opinion by the Circuit Court of Appeals, Al Jennings was convicted in one Federal District Court of the offense of assault with intent to murder and sentenced to serve a term of five years at hard labor, the sentence providing that the marshall of the court should deliver him to the penitentiary for service of the sentence. Instead of obeying such order, the marshall delivered the prisoner to the United States Marshall of another district. In such latter district he was thereupon tried for another offense, was convicted and imprisoned under such conviction. The question as to whether Jennings should receive credit on his first sentence for time spent serving the second one was presented in a habeas corpus proceeding and the court holding that he should so receive such credit he was ordered discharged. We quote from the court's opinion as follows:

"As the marshall for the Northern district of the Indian Territory acted illegally and without warrant of law in surrendering the prisoner to a custody other than that of the warden of the penitentiary at Ft. Leavenworth, the inquiry arises whether such wrongful conduct on the part of the officer suspended the operation of the sentence, and prevented it from expiring by lapse of time. This question, in my judgment, should be answered in the negative. So far as the petitioner is concerned, his rights were unaffected by the illegal act of the officer, and the case must be treated precisely as if the marshall had discharged his duty according to law, by committing the prisoner to the proper custody. If the marshall had performed his duty, the body of the petitioner would have been delivered without delay to the warden of the penitentiary at Ft. Leavenworth. The petitioner's term of imprisonment would in that event have been computed from the date of his sentence, June 4, 1898, inasmuch as the execution of the sentence was not stayed by the appeal; and deducting the allowance in his favor for good behavior at the rate of two months per year, as prescribed by the federal statutes (26 Stat. 840, c. 529, § 8 (U. S. Comp. St. 1901, p. 3727) ), his term of imprisonment would have expired prior to the time when his application for the present writ was filed. In view of the circumstances of the case, it must be presumed, in favor of the prisoner, that he would have earned his allowance of time for good behavior. He has in fact been in actual custody, undergoing imprisonment, since June 4, 1898,-- a part of the time in jail at Ardmore, in the Indian Territory, a part of the time in the penitentiary at Columbus, Ohio, and a small portion

of the time in the federal penitentiary at Ft. Leavenworth. It matters not that during a portion of the time during which he has been confined he has been held ostensibly for an offense other than that for which he was originally convicted. In the eye of the law, he has all the time been serving out the sentence that was imposed on him for an assault with intent to kill, because no ministerial officer, by disobeying the mandate of the court, and unlawfully surrendering him into another custody than that where he rightfully belonged, could suspend the running of the sentence for that offense."

In the case of Smith v. Swope, Warden, 91 Fed. 2nd 260, it was held that where a marshall who had custody of a sentenced prisoner was ordered to deliver him to prison forthwith but held prisoner in county jail and surrendered him to state authorities, the prisoner's service of sentence was deemed to begin at time of commitment and custody thereunder rather than at date of actual commitment after prisoner's parole by state authorities. From the opinion of the Circuit Court, we quote as follows:

— "The least to which a prisoner is entitled is the execution of the sentence of the court to whose judgment he is duly subject. If a ministerial officer, such as a marshal, charged with the duty to execute the court's orders, fails to carry out such orders, that failure cannot be charged up against the prisoner. The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody. Any other holding would give the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. A prisoner sentenced for one year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him. Such authority is not even granted to courts of justice, let alone their ministerial officers."

In the case of White, Warden v. Pearlman, 42 Fed. (2d) 788, the Texas State Penitentiary was designated as the place for confinement of a Federal prisoner sentenced to a term of five years imprisonment. At the end of three years, the warden discharged the prisoner with the statement that his record showed that the sentence was only three years, although the convict told him that his sentence was for five years and that there must be some mistake. The subject re-established his home and more than two years later he was advised that he was wanted. He thereupon returned to Texas and was committed to leavenworth to serve the rest of his sentence. At the end of an additional year's service, he applied for a writ of habeas corpus claiming credit for the time spent out of confinement. The writ was granted. We

quote from the opinion of the Circuit Court as follows:

"There is language in some of the opinions in the above cases which, taken from its setting, supports the position of the warden that no matter what the circumstances a prisoner must serve his time, unless pardoned or legally discharged. But opinions must be read against the background of the facts; and the facts in none of the cited cases reach the case at bar. We have here a case where the prisoner was released without fault on his part; he cannot fairly be considered as an escape or a parole violator. Furthermore, he called attention to the mistake being made and was brushed aside. He was, in substance, ejected from the penitentiary.

"A prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under the strict rule contended for by the warden, a prisoner sentenced to five years might be released in a year; picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back. It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty."

See also Albori v. U. S., 67 Fed. (2d) 4; U. S. v. Marrin, 227 Fed. 314; 16 C. J. p. 1330, Sec. 3126.

Answering the first part of your question, it is our opinion that Alexander's Texas sentences have been running since the convict's delivery to Oklahoma and he should be given credit accordingly, with proper allowance for good behavior.

We now address ourselves to the second part of your question. Article 6166z-1, Vernon's Annotated Civil Statutes, reads as follows:

"When a prisoner is entitled to a discharge from prison, he or she shall be furnished with a written or printed discharge from the manager, with seal affixed, signed by the manager, giving prisoner's name, date of sentence, from what county sentenced, amount of commutation received, if any, the trade he has learned, if any, his proficiency in same, and such description as may be practicable. Such discharged person shall be furnished with a decent outfit of citizen's clothing of good quality and fit, and two suits of underwear; and when a person and/or convict actually serves over one year, he shall receive Fifty Dollars ($50.00) in money in addition to any money

held to his or her credit, provided that if a
person and/or convict does not actually serve
one year flat time, he shall not receive Fifty
Dollars ($50.00); but in lieu thereof a person
serving less than one year actual time shall
receive Twenty-five ($25.00) Dollars in money
in addition to any money held to his or her
credit and a decent outfit of citizen's cloth-
ing of good quality and fit and two suits of
underwear, provided that if the actual time
served exceeds ten (10) years, the sum of money
shall be Seventy-five Dollars ($75.00), and if
the actual time served exceeds twenty (20) years,
the sum of money shall be One Hundred Dollars
($100.00). As far as may be practicable the
Prison Board may authorize a creation of a Bu-
reau for the purpose of placing discharged pris-
oners in connection with employment, provided
such will not be an extra expense to the Pris-
on System."

If counting continuous service since April 10,
1935, with credit, if any, accruing for commutation earned
and overtime before leaving Texas, Roy Alexander's sentences
have expired, then the State owes him the fifty dollars dis-
charge money provided to be paid by the above statute.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

GRL:LM

This opinion has been considered in conference,
approved, and ordered recorded.

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS